ELISABETH A. EDWARDS, Plaintiff, v WARREN EDWARDS, Respondent. A. RICHARD GOLUB, Appellant.

First Department, March 21, 1991

### APPEARANCES OF COUNSEL

*A. Richard Golub, pro se (Jeffrey S. Kofsky, Joel R. Brandes* and *David R. Goldberg* with him on the brief), for appellant.

*William S. Beslow (Andrew Schepard* with him on the brief), for respondent.

### OPINION OF THE COURT

SULLIVAN, J. P.

This is an appeal from an order imposing monetary sanctions and costs in the total amount of $10,000 for frivolous conduct against the attorney who formerly represented the wife in a matrimonial action, based on his alleged refusal voluntarily to withdraw from representing the wife after having been confronted with an accusation of being sexually involved with her.[1] We hold that where the conduct claimed to be frivolous consists of the refusal of a party or an attorney to perform a particular act, e.g., voluntary withdrawal as counsel, the party who sought to compel performance must establish that under the facts and circumstances of the particular case such performance was clearly and unequivocally mandated by existing law. In this case, that standard was not met.

The propriety of the order under review must be weighed against the background of this not atypical, emotionally charged matrimonial dispute. The parties were married in 1984 and their only child, a daughter, was born in December of the same year. According to the wife, the marriage was plagued by the husband's violent behavior, unfaithfulness and excessive drinking. On April 18, 1988, he moved out of the marital residence, and thereafter allegedly admitted to the wife that he had committed adultery. The parties have not resided together since, although on one occasion, in January 1989, the husband had to be forcibly removed by police from the former marital residence.

In early 1989, the wife retained A. Richard Golub, an

---

1. Although the sanction order was based, in part, on the attorney's failure personally to appear on the return date of a disqualification motion, thereby compelling an adjournment, neither party addresses the issue, and the order on appeal is not sought to be justified on that ground.

acquaintance since 1981, who had represented her in an unrelated litigation matter in 1985 and was consulted in other matters, to represent her in a divorce action, which he commenced on her behalf on March 3, 1989. The complaint charged, *inter alia,* cruel and inhuman treatment and adultery. In his answer, ultimately served over three months after service of the summons and complaint, the husband counterclaimed for divorce, charging adultery and naming attorney Golub as the corespondent.

In the interim, the wife moved for a protective order, necessitating a hearing, held on March 31, 1989, at which the wife testified that almost three weeks earlier the husband had threatened to kill her. The court rejected the husband's testimony regarding the incident as "improbable", found the wife to be distraught and frightened and, accordingly, granted her application. On the basis of this finding, an order of protection was settled on April 28, 1989, forbidding the husband from, *inter alia,* harassing, annoying or molesting the wife and from entering her residence. Despite his belief of her sexual involvement with Golub, as indicated by his testimony at the March 31 hearing, the husband did not then object to Golub's representation of the wife. In fact, he did not move to disqualify Golub for seven weeks and not before being charged with a violation of the order of protection for an incident that occurred on June 2, 1989, when he is alleged to have harassed the wife at their daughter's school picnic.

On April 25, 1989, nearly four weeks after the hearing and seven weeks after the commencement of the action, and in the midst of pending settlement negotiations, the attorneys for both parties appeared in court on the adjourned date of the wife's motion for pendente lite relief. At an impromptu bench conference, the husband's counsel requested permission to move to disqualify Golub on the ground that he was sexually involved with the wife. Purportedly, Golub responded, "[S]o what. [Your] client has committed adultery." The IAS court granted permission and advised Golub that it would grant the motion if the charge were true. The husband's attorney stated that if the matrimonial claims were not settled within "one week" he would immediately move to disqualify Golub. It should be noted that counsel's view of that discussion was that he had agreed to postpone the disqualification motion in the hopes of resolving the matter quickly and "without further embarrassment to everyone concerned." In any event, this conference produced a court direction that Golub represent

the wife in negotiating a settlement. Thereafter, Golub and the husband's attorney attempted to negotiate a settlement, making, as the husband's attorney states, substantial progress within the next few weeks.

On June 5, 1989, after being advised that the parties' child was "scared to death" of the husband as a result of the June 2, 1989 incident, Golub initiated a conference call to address questions of visitation and the husband's alleged violation of the order of protection. The matter was set down for further proceedings on June 13, 1989. In the interim, however, on June 8th, the husband's attorney sent Golub a draft separation agreement containing terms substantially different from those to which the parties had previously agreed. These differences included provisions that the husband would pay $75,000, instead of $100,000, per year maintenance for four years, subject to termination in the event the wife cohabited with someone else, a condition not included in the original agreement, and that the husband would have joint custody of the child. The draft agreement also contained a completely changed visitation schedule. According to Golub, these new terms were presented on a "take it or leave it" basis.

Simultaneously, on June 8, 1989, the husband obtained an order to show cause, returnable June 13th, seeking Golub's disqualification on the basis of his "commission of acts of adultery with [the wife]" while representing her and an order of protection barring Golub from communicating with the parties' 4½-year-old child. Golub was served with the order to show cause on Friday, June 9th. On June 12th, three months after the commencement of the action and the day before the return date of the order to show cause, the husband served his verified answer, formally raising in a counterclaim the issue of Golub's alleged adulterous relationship with the wife. According to the husband's answer, these acts of adultery commenced on April 1, 1989 and continued throughout the month.

On June 13th, 1989, the return date of the disqualification motion, an associate of Golub's appeared in court and requested an adjournment, explaining that Golub, who was available by telephone, was conducting a court-ordered deposition before a Referee, with at least seven persons in attendance. After confirming that Golub was, in fact, conducting a deposition, the court adjourned the disqualification motion to June 20th. It also authorized the husband to move for sanctions and attorney's fees against Golub. On June 15, 1989, Golub, after obtaining the wife's consent, voluntarily with-

drew from the case, executing a substitution of attorneys the next day. On the return date of the motion to disqualify, Golub submitted an affirmation, dated June 15, 1989, advising the court and his adversary of his withdrawal. As to the allegations against him, he stated, "I concede nothing."

On August 24, 1989, over two months after Golub's withdrawal, the husband, by order to show cause, moved for sanctions in the sum of $2,520 and $7,480 in attorneys fees incurred by him after April 25, 1989 in connection with the motion to disqualify, based on Golub's refusal to withdraw on that date. Golub cross-moved for sanctions. The IAS court granted the motion in its entirety and denied the cross motion, finding that Golub's conduct in refusing voluntarily to withdraw and in requiring the husband to move formally for such relief was frivolous. Since we believe that Golub's withdrawal on June 15th should have ended the matter, and, more importantly, that this is not the type of conduct to which 22 NYCRR part 130, the sanction rule, is addressed, the sanction motion should have been denied in its entirety.

Pursuant to section 130-1.1 (c) of the Rules of the Chief Administrator of the Courts (22 NYCRR), conduct is frivolous if "it is completely without merit in law or fact and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law". (22 NYCRR 130-1.1 [c] [1].) Under these standards, attorneys have been found to act frivolously when they bring motions, commence actions or prosecute appeals that are utterly without merit and cannot be supported by reasonable argument. *(See, e.g., McMurray v McMurray,* 163 AD2d 280; *Matter of Schulz v Washington County,* 157 AD2d 948.) In *McMurray,* counsel was sanctioned for pursuing "patently frivolous" appeals in an action by the wife to obtain equitable ownership of the marital residence, which had been awarded to her former husband in their prior divorce action. In dismissing the appeal, the court found that the plaintiff was impermissibly trying collaterally to attack a judgment from which no appeal had been taken. In imposing sanctions, the court characterized counsel's conduct as "inexcusable" since, as evidenced by his appellate brief, the plaintiff's position ran counter to all established precedent.

The husband argues that Golub's adamant refusal voluntarily to withdraw because of his sexual involvement with his client was without merit in law or fact. First of all, other than Golub's ambiguous, "so what", there is no proof that there was a sexual relationship between Golub and the wife. There

is thus no basis for concluding that continued representation was "completely without merit in * * * fact". Further, as the husband and the IAS court correctly note, there is no authority in this State which would require withdrawal in the circumstances presented. The two out-of-State cases cited by the IAS court and urged upon us by the husband are so factually distinguishable as to have no relevance. In *Matter of Gibson* (124 Wis 2d 466, 369 NW2d 695, *appeal dismissed sub nom. Gibson v Board of Attorneys Professional Responsibility,* 474 US 976), an attorney was suspended for making unsolicited sexual advances to a female client, including a request to disrobe. In *Matter of Wood* (265 Ind 616, 358 NE2d 128), another disciplinary proceeding, an attorney was suspended for exchanging legal services for nude photographs of his client and her daughter and for offering to provide free legal services to another client and pay court costs in return for similar photographs.

The only New York case to have come to our attention which has addressed the issue of an attorney's sexual involvement with clients is *Matter of Bowen* (150 AD2d 905, *lv denied* 74 NY2d 610), an attorney disciplinary proceeding in which respondent was alleged to have entered into a sexual relationship with three clients and to have attempted to pursue personal relationships with four other women who sought professional advice regarding matrimonial problems. The court, in sustaining the charges, held that respondent "repeatedly attempted to use the attorney-client relationship and the trust engendered thereby in furtherance of sexual relationships, taking particular advantage of clients whose matrimonial difficulties placed them in a highly vulnerable emotional state" *(supra,* at 908). In none of these cases was it the sexual relationship per se which constituted a breach of professional responsibility but rather the attorney's attempt to exploit the professional relationship to gain unsolicited sexual favors. Here, of course, even assuming the truth of the allegations, there is not the slightest hint that Golub, who knew the wife since 1981, took advantage of her or the attorney-client relationship. She has made no such complaint.

*Roy v Hartogs* (85 Misc 2d 891 [App Term, 1st Dept]), also relied upon by the IAS court, involved a psychiatrist who was found liable in malpractice for engaging in sexual relations with his patient as a form of therapy. The court found that the patient was harmed by the psychiatrist's failure to treat her with professionally acceptable procedures *(supra,* at 893).

By analogy to that case, the IAS court concluded that a lawyer breaches the fiduciary duty owed to a client by engaging in a sexual relationship during the representation. However, the IAS court made no finding that Golub's representation was deficient. Nor did it offer any analysis as to how the wife or the litigation was compromised or how such fiduciary duty was breached.

It should be noted that, at the present time, no jurisdiction in the United States has adopted an ethical code provision expressly proscribing sexual involvement between a lawyer and a client, whether the representation involves a matrimonial matter or otherwise. (Dubin, *Sex and the Divorce Lawyer: Is the Client Off Limits?*, Geo J Legal Ethics 585, 617 [1988].)[2] This State's recently promulgated Disciplinary Rules of the Code of Professional Responsibility, effective September 1, 1990, as well as its predecessor, contain no such prohibition. Moreover, at least two States, California and Alaska, have refused to adopt a per se ban on mutually consensual sexual involvement between attorney and client. (1987 Opns Cal St Bar Standing Comm on Professional Responsibility Conduct No. 1987-92 [Formal Opns]; 1988 Opns Alaska Bar Assns Ethics Comm No. 88-01.) This is not to say that an attorney's sexual involvement with a client would not, in the appropriate circumstances, run afoul of other provisions of the Code of Professional Responsibility. *(See, e.g.,* DR 5-101 [A]; DR 2-110 [B] [2]; [C] [2].) A lawyer should not, absent the client's consent after full disclosure, accept employment if the exercise of his professional judgment may be affected by his personal interest. (DR 5-101 [A].)

Of course, once Golub was named as the corespondent in the husband's counterclaim for divorce based on the wife's various acts of adultery *(see,* Domestic Relations Law § 170 [4]), the situation changed since he then became a potential witness as to her adultery, as well as to a possible defense to the husband's adultery, i.e., recrimination, based on her own acts of adultery. *(See,* Domestic Relations Law § 171 [4].) In that regard, the husband claims that in light of his accusations, Golub would be a necessary witness at any trial. An attorney is disqualified from representing a client in litigation when he "ought to be called as a witness on behalf of the client" (Code

2. According to a recent news article, however, the California Bar Association is about to adopt a formal ethics rule aimed at regulating sexual relationships between lawyers and their clients. (NY Times, Mar. 15, 1991, at B16, col 3.)

of Professional Responsibility DR 5-101 [B]). While disqualification on this ground will only be granted if the other party meets his burden of showing that the attorney ought to be called as a witness for the client and that the testimony is necessary *(S & S Hotel Ventures v 777 S. H. Corp.,* 69 NY2d 437) and the rules of disqualification are not to be "mechanically applied" *(supra,* at 444), it would appear that Golub's disqualification was inevitable once the counterclaim was asserted. "If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer or a lawyer in his or her firm may be called as a witness other than on behalf of the client, the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client at which point the lawyer and the firm must withdraw from acting as an advocate before the tribunal." (Code of Professional Responsibility DR 5-102 [B]; *see also,* DR 5-101 [C].) In any event, the husband did not serve his answer alleging the wife's adultery until June 12, 1989 and Golub withdrew just three days later. A delay of three days can hardly be deemed unreasonable.

The husband argues that, delayed interposition of the answer notwithstanding, Golub was aware of the allegations of having an adulterous relationship with the wife since March 31, 1989 and knew as early as April 25, 1989, when those allegations were repeated, that his alleged sexual involvement with the wife would be raised in the husband's responsive pleading and thus should have withdrawn earlier without the necessity of a disqualification motion. Such argument ignores the record. Neither the husband nor the court had any objection to Golub's continued representation of the wife as long as the possibility of a settlement was in the offing. Thus, any objection to Golub's representation of the wife was waived with respect to the period from April 25 to June 8, 1989. *(See, Matter of Huie [Gottfried],* 2 AD2d 163, 165.) After Golub reported the husband's alleged harassment of the wife at a school picnic the issue of Golub's disqualification was resurrected. It was at that time that the husband's counsel sent Golub a draft agreement allegedly containing terms different from those previously agreed upon and simultaneously obtained an order to show cause seeking his disqualification.[3]

---

3. In fairness, the husband's counsel, after April 25, 1989, made it clear that in the event the parties were able to settle their legal differences he would not sanction the execution of any agreement unless the wife had independent cocounsel with Golub.

And, four days later, the husband served his answer counterclaiming for divorce on the ground of the wife's alleged adultery with Golub. It seems fairly obvious that this three-pronged attack was part of a tactical maneuver to pressure the wife into acceptance of a settlement more advantageous to the husband than originally agreed upon or in retaliation for the wife's application with respect to an alleged violation of the order of protection or both. Given the husband's acquiescence in Golub's continued representation of the wife at the time when it suited his purposes and when, as he argues, the same serious impediments to that representation existed as when it was formally challenged, his current indignation at the continued representation has a somewhat hollow ring.

Accordingly, the order of the Supreme Court, New York County (Kristin Booth Glen, J.), entered May 9, 1990, which, *inter alia,* granted defendant's motion and imposed sanctions ($2,520) against plaintiff's outgoing attorney, A. Richard Golub, and awarded counsel fees ($7,480) against plaintiff and/or Golub, on the ground he had engaged in frivolous conduct, should be modified, on the law, to deny the motion and, except as thus modified, affirmed, without costs or disbursements.

CARRO, ELLERIN, ROSS and KASSAL, JJ., concur.

Order, Supreme Court, New York County, entered on May 9, 1990, unanimously modified, on the law, to deny defendant's motion and, except as thus modified, affirmed, without costs or disbursements.