Benjamin A. DOUGLAS and Douglas,
Kressler, & Wuester, P.C.,
Petitioners,

v.

Gertrude DELP and Billy
Delp, Respondents.

No. 97–0827.

Supreme Court of Texas.

Argued Sept. 8, 1998.

Decided March 25, 1999.

Rehearing Overruled April 29, 1999.

Charles T. Frazier, Jr., Dwayne J. Hermes, Gregory J. Lensing, Dallas, for petitioner.

Jerome J. Schiefelbein, Jon M. Smith, Gary F. DeShazo, Austin, for respondent.

Justice HANKINSON delivered the opinion for a unanimous Court.

Billy and Gertrude Delp sued Benjamin A. Douglas and Douglas, Kressler & Wuester, P.C., (collectively DKW) for legal malpractice arising out of representation in a business dispute. When Billy later filed for bankruptcy, the malpractice claims were included as an asset in the bankruptcy estate. The bankruptcy trustee sold the claims to a representative of DKW's malpractice carrier, who then successfully moved the trial court for an agreed dismissal of Billy's claims. The trial court eventually directed a verdict for DKW on all of Gertrude's legal malpractice and Deceptive Trade Practices Act (DTPA) claims. The court of appeals held that the trial court erred by approving the agreed dismissal of Billy's claims and granting a directed verdict on Gertrude's malpractice claim and two of her three DTPA claims. 948 S.W.2d 483. For the reasons we explain below, we conclude that: (1) Billy lacks standing to pursue his claims; (2) while Gertrude has standing to pursue the mental anguish damages part of her legal malpractice claim, she may not recover in this case because those damages arise as a consequence of economic loss; and (3) based on the allegations and evidence in this case, Gertrude may not recover under the DTPA. We therefore vacate in part and reverse in part the judgment of the court of appeals, render judgment that Gertrude take nothing on her legal malpractice and DTPA claims, and dismiss the remainder of the Delps' claims for want of jurisdiction.

In the mid–1950s, Billy and Gertrude Delp, along with their partner John Harvison and his wife, formed Nu–Way Oil Company. They eventually created several Nu–Way companies (collectively Nu–Way) and acquired others, including Economy Oil and Dynamic Industries. In the 1980s, they formed Nu–Way, Inc., which held the stock to these other companies. Billy owned half of the stock in Nu–Way and Economy and one-third of the stock in Dynamic; the Harvison family owned the remaining stock in these companies. Billy, Gertrude, and Harvison served as the companies' directors.

In 1987, the directors of Nu–Way, Inc., voted to go public. In order to do so, Billy, Gertrude, and Harvison formed FFP Partners, L.P. In exchange for becoming limited partners, Dynamic, Economy, and Nu–Way each contributed their assets to FFP Partners. These companies then formed FFP Operating, which was a subsidiary of, and managed, FFP Partners. They also formed

FFP Management, which became a general partner of both FFP Partners and FFP Operating. Billy, Harvison, and six others were the directors of FFP Management. Billy was FFP Management's chief executive officer. Gertrude was neither an officer nor a director of FFP Management.

Soon after going public, Billy contends that Harvison began attempting to buy businesses outside of the companies' core business activities. Fearing that such a move would hinder the partners from meeting expansion commitments they had made to investors, Billy met with attorneys from DKW to discuss whether Gertrude and he could take legal action to thwart Harvison's attempts. DKW advised Billy and Gertrude that they were legally entitled to modify the FFP Management board because companies that Billy and Gertrude controlled, Economy and Nu–Way, owned fifty percent of FFP Management's voting rights. Thereafter, in an attempt to make the board smaller and less susceptible to Harvison's influence, Billy authorized notice of a special meeting to be sent to FFP Management shareholders.

In response to the special meeting notice, Harvison called for a separate shareholders' meeting, at which Billy was terminated as FFP Management's chief executive officer. At subsequent Nu–Way and Economy meetings, Harvison was removed as an officer of those companies. Billy was given authority to vote all of Nu–Way's and Economy's stock in FFP Management, thereby giving Billy control of the outcome of FFP Management shareholders' meetings.

Harvison responded by suing Billy and Gertrude, who were represented by DKW. Two days into a temporary injunction hearing, at which Gertrude was the primary witness, the two sides began settlement negotiations. Eventually they reached an agreement, which Harvison's attorneys finalized in a compromise settlement agreement. After meeting with DKW for approximately thirty minutes to an hour, Billy and Gertrude signed the agreement. Part of the agreement required Gertrude to resign from the boards of Nu–Way and Economy, which resulted in their boards being deadlocked, with only Billy and Harvison as directors.

Nu–Way began experiencing financial difficulties shortly thereafter. Sunbelt Savings eventually sued Nu–Way, Billy, and Harvison on notes Nu-way executed, which Billy and Harvison personally guaranteed. Sunbelt settled with Harvison, but obtained a $1.2 million judgment against Nu–Way and Billy. Billy was unable to force Nu–Way to liquidate its assets, allegedly due to the director deadlock. In the settlement with Harvison, Sunbelt sold the $1.2 million judgment to Harvison. Harvison then assigned the judgment to a company his children owned, which foreclosed on the Nu–Way assets. As a result, the Delps lost all the assets they held through Nu–Way.

In May 1991, Billy and Gertrude sued DKW for legal malpractice over its handling of the settlement agreement and for failing to adequately prepare Gertrude for her testimony in the temporary injunction hearing. In November 1991, Billy filed for chapter 11 bankruptcy, claiming that he was forced to do so because of the Sunbelt foreclosure and his inability to sell any Nu–Way assets. Billy listed the malpractice claims against DKW as an asset. Gertrude was not a party to the bankruptcy, and her legal malpractice claims were not listed as an asset. The bankruptcy court, over Billy's objection, confirmed a reorganization plan. On Billy's appeal, the bankruptcy court's order was affirmed by the federal district court and the Fifth Circuit. *See In re Delp*, 42 F.3d 640 (5th Cir.1994) (mem.). Pursuant to the reorganization plan, the bankruptcy trustee sold the claims against DKW to Philip Treacy & Associates, which was acting on behalf of DKW's malpractice carrier. Treacy then filed with the trial court a motion to dismiss Billy's malpractice claims, agreed to by Treacy and DKW. The trial court granted the motion over Billy's objection.

Gertrude proceeded to trial on her legal malpractice and DTPA claims against DKW. Her expert, George Berry, testified that Billy and Gertrude had suffered $9.1 million in damages because of DKW's malpractice. Berry reached this figure by calculating: (1) the decline in the Delps' net worth caused by

the loss of their holdings in the Nu–Way companies, (2) Billy's lost earning capacity, and (3) Billy's lost credit reputation. Berry testified that Gertrude's damages constituted one-half of this figure, or $4.55 million. Gertrude also claimed damages for mental anguish, explaining that she suffered stress and depression that forced her to see a doctor, and caused physical ailments including hair loss and esophageal reflux.

At the close of Gertrude's case, the trial court granted a directed verdict for DKW. Gertrude and Billy appealed the directed verdict and the dismissal of Billy's claims. The court of appeals reversed and remanded as to both Gertrude's and Billy's interest in the malpractice claims and part of Gertrude's DTPA claims. 948 S.W.2d at 497. We granted DKW's petition for review. We first examine DKW's complaints about Billy's claims, and then its complaints about Gertrude's claims.

■ DKW complains that Billy lacks standing to challenge the dismissal of his legal malpractice claims. Reasoning that Texas law prohibits assigning legal malpractice claims, the court of appeals concluded that the dismissal of the claims following the assignment to Treacy was error. 948 S.W.2d at 491–92. Without addressing the validity of the assignment or the dismissal, we agree with DKW that Billy lacks standing to challenge the assignment or dismissal in this proceeding.

Under section 541 of the Bankruptcy Code, filing a petition for bankruptcy creates a bankruptcy estate. See 11 U.S.C. § 541(a); Louisiana World Exposition v. Federal Ins. Co., 858 F.2d 233, 245 (5th Cir.1988). "[A]ll legal or equitable interests of the debtor in property as of the commencement of the case" become part of that estate, including any legal claims that belonged to the debtor before the petition was filed. 11 U.S.C. § 541(a)(1); see State Farm Life Ins. Co. v. Swift (In re Swift), 129 F.3d 792, 795 (5th Cir.1997). The bankruptcy trustee is the representative of the estate. See 11 U.S.C. § 323(a). Once a claim belongs to the estate, "then the trustee has exclusive standing to assert the claim." Schertz–Cibolo–Universal City Indep. Sch. Dist. v. Wright (In re Edu-cators Group Health Trust), 25 F.3d 1281, 1284 (5th Cir.1994).

When Billy filed his bankruptcy petition, his legal malpractice claims became part of the bankruptcy estate. Once the claims became part of the estate, only the bankruptcy trustee had standing to pursue them. By filing his bankruptcy petition, Billy relinquished to the trustee any standing to prosecute or dispose of the claims. At no time did standing revest in Billy. When the reorganization plan was confirmed by the bankruptcy court, and subsequently affirmed on appeal, it included the legal malpractice claims as an asset. Billy was afforded a full opportunity to object to the handling of any part of the bankruptcy estate, including the trustee's assignment of the malpractice claims, during the bankruptcy proceeding.

■ Standing is a component of subject matter jurisdiction. See Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 443 (Tex.1993). Without subject matter jurisdiction, courts may not address the merits of a case. See State Bar of Tex. v. Gomez, 891 S.W.2d 243, 245 (Tex.1994). As Billy did not have standing in this proceeding to object to the assignment and subsequent dismissal of the legal malpractice claims, the trial court did not have subject matter jurisdiction to address the merits of his claims. See Noot-sie, Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 662 (Tex.1996). Because Billy's lack of standing left the trial court without subject matter jurisdiction over his claims, we vacate that part of the court of appeals' judgment remanding Billy's claims and dismiss those claims for want of jurisdiction.

DKW also challenges Gertrude's standing to maintain her claims. DKW complains that the court of appeals improperly reversed the trial court's directed verdict on Gertrude's claims for negligence, breach of fiduciary duty, and two of three alleged violations of the DTPA. In what is essentially a legal malpractice claim, Gertrude alleged that DKW was negligent and breached its fiduciary duty by failing to adequately review the compromise settlement agreement and by failing to adequately prepare her for the

temporary injunction hearing. Gertrude sought damages for the marital community's economic losses and her own mental anguish. For the reasons we explain below, we conclude that Gertrude may not pursue any of the claims at issue.

■ As standing is a threshold issue, we first determine whether any of Gertrude's claims became part of Billy's bankruptcy estate. Under section 541 of the Bankruptcy Code, a bankruptcy estate consists of, among other property, "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is ... under the sole, equal, or joint management and control of the debtor." 11 U.S.C. § 541(a)(2); see Ragan v. C.I.R., 135 F.3d 329, 333 (5th Cir.1998). Courts look to state law to characterize the "property rights in the assets of a bankrupt's estate." Butner v. United States, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); see also In re Haber Oil Co., 12 F.3d 426, 435 (5th Cir. 1994).

■ With limited exceptions, community property under Texas law consists of all property either spouse acquired during the marriage "other than separate property." See TEX. FAM.CODE § 3.002; Free v. Bland, 369 U.S. 663, 664, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962) (examining Texas law). Texas recognizes both sole and joint-management community property. See TEX. FAM.CODE § 3.102; Cockerham v. Cockerham, 527 S.W.2d 162, 169–70 (Tex.1975). Sole-management community property is that property which, though acquired during the marriage, would have belonged to that spouse if single. See TEX. FAM.CODE § 3.102(a); Cockerham, 527 S.W.2d at 169. When different kinds of damages are claimed in a single cause of action, we look to the nature of each injury when classifying those damages as community or separate property. See Graham v. Franco, 488 S.W.2d 390, 396–97 (Tex. 1972) (classifying damages from personal injury suit as community or separate property based on whether injury was to the individual spouse, such as pain and suffering, or ultimately to the marital community, such as loss of earning capacity); see also Schertz–Cibolo–Universal City Indep. Sch. Dist., 25 F.3d at 1284 (whether cause of action belongs to the bankruptcy estate depends in part on "the nature of the injury for which relief is sought").

■ Gertrude seeks damages for: (1) the decline in the Delps' net worth based on the loss of their interests in the Nu–Way companies, (2) Billy's lost earning capacity, (3) Billy's credit reputation, and (4) mental anguish. As Billy and Gertrude obtained the Nu–Way companies during the marriage and managed them together, any economic loss attributable to the loss of their interests in those companies was an injury to jointly-managed community assets. See TEX. FAM. CODE §§ 3.002, 3.102(c). Therefore, any claim for those losses was swept into Billy's bankruptcy estate, and Gertrude has no standing to pursue such losses in this lawsuit. See 11 U.S.C. § 541(a)(2). Billy's loss of earning capacity during the marriage constitutes his sole-management community property. See TEX. FAM.CODE §§ 3.001, 3.102(a); Perez v. Perez, 587 S.W.2d 671, 673 (Tex. 1979). Billy's credit reputation is also his sole-management community property, as it was acquired, at least in part, during the marriage and would have belonged solely to him were he not married. See TEX. FAM. CODE §§ 3.002, 3.102(a); Cockerham, 527 S.W.2d at 169–70. Therefore, the right to recover for any injury to Billy's earning capacity and credit reputation was also swept into Billy's bankruptcy estate, and Gertrude lacks standing to pursue these claims as well. See 11 U.S.C. § 541(a)(2).

■ Gertrude further claims a right to relief for her own mental anguish. Any mental anguish damages recovered are part of the injured spouse's separate property. See Moreno v. Alejandro, 775 S.W.2d 735, 737 (Tex.App.-San Antonio 1989, writ denied); Johnson v. Holly Farms of Tex., Inc., 731 S.W.2d 641, 646 (Tex.App.-Amarillo 1987, no writ). Therefore, Gertrude's claim for mental anguish damages did not become part of Billy's bankruptcy estate, and Gertrude maintains standing to sue for those damages. DKW argues that even if Gertrude maintains standing to sue for those damages, Texas law should not permit recovery for mental an-

guish in legal malpractice cases, or at least not without proof of heightened culpability on the defendant's part. Citing *Rhodes v. Batilla*, 848 S.W.2d 833, 844–45 (Tex.App.—Houston [14th Dist.] 1993, writ denied), and *Heath v. Herron*, 732 S.W.2d 748, 753 (Tex.App.—Houston [14th Dist.] 1989, writ denied), the court of appeals held that a client who can show "egregious or extraordinary circumstances" may recover mental anguish damages. 948 S.W.2d at 495.

■ This Court has not yet addressed whether mental anguish damages are recoverable for legal malpractice, although without analyzing the issue we allowed an award of mental anguish damages arising out of attorney negligence to stand in *Cosgrove v. Grimes*, 774 S.W.2d 662, 666 (Tex. 1989). Reasoning that mental anguish is not generally a foreseeable consequence of an attorney's negligence, and that recovery of economic loss usually suffices to make a plaintiff whole, other courts have concluded that a plaintiff may not recover mental anguish damages when those damages are a consequence of economic loss. *See generally Boros v. Baxley*, 621 So.2d 240, 244 (Ala. 1993); *Reed v. Mitchell & Timbanard, P.C.*, 183 Ariz. 313, 903 P.2d 621, 626–27 (App. 1995); *Merenda v. Superior Court*, 3 Cal. App.4th 1, 4 Cal.Rptr.2d 87, 92 (1992); *Gavend v. Malman*, 946 P.2d 558, 563 (Colo. Ct.App.1997); *Segall v. Berkson*, 139 Ill. App.3d 325, 93 Ill.Dec. 927, 487 N.E.2d 752, 756 (1985); *Richards v. Cousins*, 550 So.2d 1273, 1278 (La.Ct.App.1989); *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.*, 556 N.W.2d 557, 562 (Minn.1996); *Selsnick v. Horton*, 96 Nev. 944, 620 P.2d 1256, 1257 (1980); *Gautam v. DeLuca*, 215 N.J.Super. 388, 521 A.2d 1343, 1348–49 (App.Div.1987); *Sanders v. Rosen*, 159 Misc.2d 563, 605 N.Y.S.2d 805, 810 (N.Y.Sup.Ct.1993); *Hilt v. Bernstein*, 75 Or.App. 502, 707 P.2d 88, 95–96 (1985); *Wehringer v. Powers & Hall, P.C.*, 874 F.Supp. 425, 429–30 (D.Mass.1995) (applying Massachusetts law); *see also* 2 Ronald E. Mallen & Jeffrey M. Smith, LE-GAL MALPRACTICE § 19.11, at 612 (4th ed. 1996) ("The prevailing rule is that damages for emotional injuries are not recoverable if they are a *consequence* of other damages caused by the attorney's negligence."). *But see Beis v. Bowers*, 649 So.2d 1094, 1096 (La.Ct.App.1995) (permitting recovery of mental anguish damages for legal malpractice); *Salley v. Childs*, 541 A.2d 1297, 1300 (Me.1988) (same); *Gore v. Rains & Block*, 189 Mich.App. 729, 473 N.W.2d 813, 818–19 (1991) (same).

Some courts have allowed mental anguish claims to proceed when the client's direct injury is not exclusively economic, but is more personal in nature, for example, loss of child custody or loss of liberty.[1] These courts recognize that economic recovery alone would not make the plaintiff whole because of the very personal nature of the injury. *See Wagenmann v. Adams*, 829 F.2d 196, 221 (1st Cir.1987) (applying Massachusetts law) (confinement in mental hospital); *Snyder v. Baumecker*, 708 F.Supp. 1451, 1464 (D.N.J.1989) (applying New Jersey law) (incarceration); *Holliday v. Jones*, 215 Cal. App.3d 102, 264 Cal.Rptr. 448, 458 (1990) (criminal conviction later reversed); *Bowman v. Doherty*, 235 Kan. 870, 686 P.2d 112, 118 (1984) (arrest); *Kohn v. Schiappa*, 281 N.J.Super. 235, 656 A.2d 1322, 1324–25 (Law Div.1995) (adoption).

Some of the same courts following the general rule that mental anguish is not a compensable element of damages in legal malpractice cases would permit such damages when an attorney has acted with heightened culpability. *See, e.g., Boros*, 621 So.2d at 244–45; *Bowman*, 686 P.2d at 118; *Lickteig*, 556 N.W.2d at 562; *Selsnick*, 620 P.2d at 1257; *Gautam*, 521 A.2d at 1348; *Timms*, 713 F.Supp. at 954. The court of appeals in this case may have had this kind of standard in mind when it determined that Gertrude presented evidence of "egregious or extraordinary circumstances," and thus that she was entitled to mental anguish damages. 948

1. We note that under Texas law, plaintiffs convicted of a crime may maintain legal malpractice claims in connection with that conviction "only if they have been exonerated on direct appeal, through post-conviction relief, or otherwise." *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 497–98 (Tex.1995). We express no opinion on what kinds of damages a plaintiff able to make that required showing may recover.

S.W.2d at 495. The court focused, however, not on any heightened culpability on the part of DKW, but on the severity of the anguish Gertrude suffered. We have discovered no other court explicitly adopting such a test that focuses not on the attorney's conduct but on the client's condition.

In *City of Tyler v. Likes*, 962 S.W.2d 489 (Tex.1997), our most recent comprehensive discussion of mental anguish damages, we reaffirmed the importance of awarding sufficient damages to make the plaintiff whole. In so doing, we disallowed mental anguish damages to a plaintiff whose property was negligently harmed. *Id.* at 497. We concluded that damages measured by the economic loss would be "an adequate and appropriate remedy for negligent harm to real or personal property." *Id.* We reasoned that, "[w]hile few persons suffering serious bodily injury would feel made whole by the mere recovery of medical expenses and lost wages, many whose property has been damaged or destroyed will be entirely satisfied by recovery of its value." *Id.* at 496–97. Although *Likes* did not involve an attorney-client relationship, we think the principles announced in *Likes* support our conclusion that when the injuries caused by an attorney's negligence are economic, the plaintiff can be fully recompensed by the recovery of any economic loss. Restoration of the pecuniary interest suffices to return a plaintiff to her prior circumstances.

 Gertrude relies on *Likes* as establishing the principle that breach of a fiduciary relationship may give rise to a claim for mental anguish damages. In *Likes* we did point out that recovery of mental anguish damages has been permitted as the foreseeable result of breach of duties arising from "certain special relationships," including that of physician-patient. *Likes*, 962 S.W.2d at 496. In particular we noted that mental anguish is a foreseeable result of most doctors' negligence, "perhaps because most physicians' negligence also causes bodily injury." *Id.* The foreseeable result of an attorney's negligence, on the other hand, typically extends only to economic loss. *See Wehringer*, 874 F.Supp. at 429; *Merenda*, 4 Cal.Rptr.2d at 91; *Selsnick*, 620 P.2d at 1257; *see also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 75, cmt. g (Tentative Draft No. 8, 1997). Therefore, consistent with the policy goals set forth in *Likes* and by the majority of courts that have thus far addressed this issue, and in keeping with the well-established principle that a plaintiff should receive an amount of damages sufficient to make her whole, we hold that when a plaintiff's mental anguish is a consequence of economic losses caused by an attorney's negligence, the plaintiff may not recover damages for that mental anguish. As Gertrude's claim for mental anguish damages is a consequence of her economic loss, she may not maintain that claim in this case. We express no opinion on what standard may be appropriate when additional or other kinds of loss are claimed or when heightened culpability is alleged.

 Finally, Gertrude alleged that DKW, by advising the Delps to sign the compromise settlement agreement, misrepresented that the agreement was adequate to protect the Delps' interests and thereby violated sections 17.46(b)(5), (7), and (12) of the DTPA. The trial court granted a directed verdict for DKW on all three sections, but the court of appeals concluded that the jury could have inferred a misrepresentation, and reversed on sections (b)(5) and (12). 948 S.W.2d at 496. (Gertrude did not petition for review of the court of appeals' disposition of the section (b)(7) claim favorable to DKW.) DKW challenges the court of appeals' remand of those two DTPA claims.

 Texas Business and Commerce Code § 17.46(b) provides in pertinent part that the following deceptive trade practices are unlawful:

(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship approval, status, affiliation, or connection which he does not;

. . . .

(12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law[.]

TEX. BUS. & COM.CODE § 17.46(b). These subsections are intended to protect consumers against misrepresentations of material fact; statements of opinion alone are generally insufficient to rise to the level of actionable misrepresentations under the DTPA. *See Pennington v. Singleton,* 606 S.W.2d 682, 687 (Tex.1980) (noting that misrepresentations of material fact are actionable under sections 17.46(b)(5) and (7) so long as they are not merely "puffing" or opinion); *cf. Latham v. Castillo,* 972 S.W.2d 66, 69–70 (Tex. 1998) (allowing claim for mental anguish damages against attorney under unconscionability section of pre–1995 version of DTPA).

Gertrude identified no particular statements by DKW about the settlement agreement's "characteristics" or "benefits," or about any "rights, remedies, or obligations" conferred by the agreement. She testified that while she did not recall specifically anything DKW explained to her about the agreement, DKW advised her to sign it and she did in fact sign it on DKW's advice. Based on this testimony, the court of appeals concluded that a jury could infer "that DKW had represented to [the Delps] that the [agreement] protected their interests." 948 S.W.2d at 496.

Assuming that a representation, as that term is used in the DTPA, could be inferred from DKW's advice to sign the agreement, a general representation that the agreement would protect the Delps' interests is too vague under the facts of this case to support DTPA liability. *See State Farm County Mut. Ins. Co. v. Moran,* 809 S.W.2d 613, 621 (Tex.App.—Corpus Christi 1991, writ denied) (holding "[g]eneral claims by [an] insurer of the adequacy or sufficiency of coverage ... are not generally actionable under the DTPA"); *Employers Cas. Co. v. Fambro,* 694 S.W.2d 449, 452 (Tex.App.—Eastland 1985, writ ref'd n.r.e.) (holding insurer not liable for misrepresentation based solely on general statement that policy was "adequate" or "sufficient"); *see also Humble Nat'l Bank v. DCV, Inc.,* 933 S.W.2d 224, 229–30 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (identifying factors to be considered in determining whether statement is actionable or mere "puffing" or opinion). Without any

evidence about which interests DKW represented would be protected, a jury would have no standard by which to measure the accuracy of the representation. Accordingly, Gertrude's evidence constitutes, at most, nonactionable opinion. *See Pennington,* 606 S.W.2d at 687; *see also Humble Nat'l Bank v. DCV, Inc.,* 933 S.W.2d 224, 230 (Tex.App.-Houston [14th Dist.] 1996, writ denied). The court of appeals therefore erred in reversing the directed verdict for DKW on the DTPA claims.

Accordingly, we reverse that part of the court of appeals' judgment remanding Gertrude's mental anguish and DTPA claims, and render judgment that she take nothing on those claims. We vacate the judgment of the court of appeals on the Delps' remaining claims, and dismiss those claims for lack of jurisdiction.