**Fred N. MOHR, Plaintiff,**

v.

**Marshall B. ALLEN, Defendant.**

**No. 75 Civ. 2039 (MP).**

United States District Court,
S. D. New York.

Jan. 28, 1976.

C. Donald Mohr, New York City, for plaintiff.

Robert W. Adler, New York City, for defendant.

## MEMORANDUM

POLLACK, District Judge.

Defendant moves to dismiss the complaint pursuant to Rules 12(b)(1), (3), (6), (7) Fed.R.Civ.P. on the grounds that (1) the Court lacks diversity jurisdiction on which the claims rest because the plaintiff, although he is a United States Citizen, is not a resident of any state, (2) this is an inappropriate and inconvenient forum under the doctrine of *forum non conveniens,* (3) plaintiff failed to join and the Court lacks jurisdiction over necessary Mexican parties who should be parties defendant to this litigation, (4) the Court lacks jurisdiction over the subject matter of the suit, namely, Mexican land, and (5) one of the joint ventures alleged in the complaint is impossible to perform and illegal.

Defendant also moves for summary judgment pursuant to Rule 56 on the grounds that plaintiff has failed to state a claim upon which relief may be granted and that the evidence shows that recovery is barred.

For the reasons shown hereafter under all the facts and circumstances, the motions to dismiss the complaint for lack of diversity jurisdiction or in the alternative under the doctrine of *forum non conveniens* are granted.

In this diversity action, plaintiff seeks an accounting of three alleged oral joint ventures (one involving a Mexican hotel project and the others involving two boats) and the sale of alleged joint venture Mexican property by a receiver to be appointed by the Court. He also sues for damages in fraud and unjust enrichment with respect to the Mexican hotel joint venture and in fraud and conversion with respect to the other two alleged oral joint ventures.

The complaint describes an involved series of Mexican transactions in Counts One through Three. The plaintiff describes therein an alleged oral joint venture to construct a resort hotel facility in Zihuatenjo, Mexico. Plaintiff asks that defendant be decreed a trustee of this foreign hotel facility, that the venture be dissolved, and that defendant be ordered to deliver books and records of Promotora de Guerrero, S.A. (the Mexican corporation formed to facilitate the construction of and to hold the land for the hotel) to a receiver to be appointed by the Court to sell the Mexican hotel and pay the funds into Court for distribution.

Plaintiff contends that his work in supervising the construction and design of the Mexican hotel was intended as a contribution of capital to the alleged joint venture. Defendant denies that these services were made in pursuance of any joint venture with him. Defendant claims to have paid plaintiff $1,000 a month salary as an employee principally for his usefulness as an interpreter of the Spanish language.

The Promotora corporation leased the land for the Mexican hotel from one Verboonem, a Mexican citizen who is now deceased. Under Mexican law, the shore land in question was communal, government-owned property (called "Ejido" land) and neither it nor the stock in the owner corporation could be held by a non-Mexican.

Therefore, according to defendant, he was to provide funds to the Mexican corporation to build a hotel on the Mexican land and he would be repaid out of the eventual profits from the operation of the hotel.

The lease of the "Ejido" land was premised on Verboonem's control over the land and ability to make the lease, a premise which defendant contends is faulty absent a specific presidential authorization to subdivide the land. Copies of a Mexican government decree expropriating the land have been submitted to the Court, but neither party claims that any subdivision was authorized. Accordingly, defendant contends that the attempt to lease was a nullity.

However, plaintiff asserts that representatives of the Mexican government agreed that when and if the land was expropriated Promotora would obtain absolute title to it. He further asserts that defendant's Mexican attorney is holding the agreement.

Whatever the status of the land, the planning and construction apparently proceeded until December 1970 when Cervera, the Mexican architect and builder of the project and Promotora's principal officer and shareholder, was discharged. It is charged that he improperly issued 2,350 shares of stock to himself and also failed to complete construction on time or to pay off debts to workers and suppliers.

Upon his discharge, a trust agreement was worked out for the surrender of the Cervera stock through the Banco de Comercio. Defendant was to deposit $269,983 in the Bank and Cervera was to deliver his shares to the Bank and the books and documents of Promotora to the Mexican firm of Mancera Hnos y Cia, and to resign. Defendant then was to have the right to designate persons to whom the shares could be sold and Mexican law was to govern the terms of the trust.

Defendant claims that Cervera delivered the stock only and then resigned, and that defendant recovered the escrow money but not the shares, which the Bank still holds.

It now appears that 150 non-bearer shares of Promotora are being held by plaintiff and most, if not all, the remaining shares are in the Bank's possession.

Counts Four through Six of the complaint describe an alleged oral joint venture in each of two boats, the "Leoflada" and the "El Viego," and through these counts plaintiff seeks an accounting plus damages in fraud and conversion.

As the first of the two joint ventures, plaintiff describes a plan whereby he was to search out and buy a boat, pay for work done on the interior of the boat and supervise operations and maintenance of the vessel, while defendant was to supply capital to purchase and maintain the boat and to pay the crew's salary.

According to plaintiff, both he and defendant were to attempt to find customers to charter the boat and to share equally in any proceeds from rental or sale of the boat. Plaintiff alleges and defendant denies that this oral joint venture contemplated the application of New York law.

In 1960 a remodeled Thames barge named the "Leoflada" was purchased for $16,000 and plaintiff put $8,000 into work on the interior of the boat. It was transported from Spain to California and operated by plaintiff from 1966 to 1969 when it sank in a severe storm.

A sum of $50,000 was apparently collected in insurance on the boat and invested (according to plaintiff without his permission) in a new boat, the "Althea" (subsequently renamed "El Viego"), which cost around $100,000. Plaintiff alleges a second oral joint venture involving the "El Viego," pursuant to which plaintiff would allow his portion

of the $50,000 insurance proceeds to be invested in the second boat and defendant would pay the remaining cost of the boat. Otherwise, the alleged agreement was the same as the first.

The papers submitted on these motions indicate that the second boat was sailed in and around Mexico and that the parties contemplated using it in connection with the planned hotel resort.

Plaintiff claims to have operated the second boat and fulfilled his other obligations from July 1971 through August 1972 when defendant stopped paying for the operations of the boat. He also claims to have paid crew salaries of $4,767.52 in August 1971 when defendant failed to do so.

None of the above-described alleged transactions and understandings, with the exception of the trust agreement and the lease of the Ejido land, were reduced to writing. The alleged business relationship between the parties was broken off in August 1972 as the result of a personal, apparently non-business-related, squabble.

## Subject Matter Jurisdiction

Defendant argues that at the time of the institution of this suit plaintiff, a domiciliary of Mexico for 14 years, had not taken up a domicile in the United States and that as a non-resident American citizen plaintiff fails to provide this Court with the requisite diversity jurisdiction over the non-federal questions he raises.

On April 7, 1975 plaintiff arrived in New Jersey (where he was born) after 15 years abroad. He claims to have abandoned his admitted Mexican domicile of well over 14 years and asserts that he moved into a room in his sister's home in Glen Ridge, New Jersey. Just a few weeks after this move the complaint herein was filed.

A few weeks later, in June, plaintiff left Glen Ridge to spend the summer in Vermont; he had not found a job, he did not file a tax return on April 15th and he did not register to vote in New Jersey at any time. In September he was hired by the Playboy Hotel in Lake Geneva, Wisconsin where he is now employed.

In order to find that subject matter jurisdiction over this case exists the Court would have to be satisfied that plaintiff had abandoned his Mexican domicile and adopted a domicile in New Jersey. *See Yonofsky v. Wernick,* 362 F.Supp. 1005, 1016 (S.D.N.Y.1973); *Spanos v. Skouras Theatres Corp.,* 235 F.Supp. 1 (S.D.N.Y.1964), *aff'd in part, rev'd in part on other grounds,* 364 F.2d 161 (2d Cir.), *cert. denied,* 385 U.S. 987, 87 S.Ct. 597, 17 L.Ed.2d 448 (1966).* A nonresident United States citizen does not satisfy the jurisdictional requirements set out for a diversity action in Article III of the Constitution and 28 U.S.C. § 1332(a)(2). *Haggerty v. Pratt Institute,* 372 F.Supp. 760 (E.D.N.Y. 1974); *Van Der Schelling v. U. S. News & World Report, Inc.,* 213 F.Supp. 756 (E.D.Pa.), *aff'd per curiam,* 324 F.2d 956 (3d Cir. 1963), *cert. denied,* 377 U.S. 906, 84 S.Ct. 1166, 12 L.Ed.2d 177 (1964).

The facts evinced on this motion do not show that plaintiff had abandoned his Mexican domicile or that he adopted a domicile in New Jersey. The Glen Ridge stopover was not plaintiff's adoption of a fixed, true and permanent home to which he had the intention of returning whenever absent, C. Wright, *The Law of Federal Courts,* § 26, p. 86 & n. 4 (1970). While it appears that plaintiff used the Glen Ridge address as something of a sojourn during the April to June period in 1975, this behavior does not differ materially from his practise when visiting the United States during the many years of his admitted Mexican domicile. Plaintiff's sister estimated that he spent a few nights a week in her home and plaintiff admits making visits during the same period to friends in New York and elsewhere in New Jersey. While plaintiff did store certain possessions in the Glen Ridge home from April

---

* Domicile is the test for the "citizenship" required by 28 U.S.C. § 1332(a)(2). *Yonofsky, supra.*

to September 1975, he had stored papers and books with his sister throughout his lengthy domicile in Mexico.

Plaintiff asserts that he intended to make Glen Ridge his domicile at the time the action was brought and that he listed New Jersey as his residence on a Vermont driver's license obtained in the summer of 1975, but the Court finds these statements of intention inconclusive in light of plaintiff's manifested conduct to the contrary. *See Korn v. Korn,* 398 F.2d 689 (3d Cir. 1968); *District of Columbia v. Murphy,* 314 U.S. 441, 456, 62 S.Ct. 303, 86 L.Ed. 329 (1941).

■ The parties have not provided the Court with facts sufficient for a finding that plaintiff had, at the time of the filing of the complaint, abandoned his Mexican domicile. The inadequacy of the record in that regard does not preclude a decision that the requisite diversity of citizenship is lacking. Whether plaintiff maintained his Mexican domicile until establishing a new one, *Kaiser v. Loomis,* 391 F.2d 1007 (6th Cir. 1968); *Garner v. Pearson,* 374 F.Supp. 580, 590 (M.D.Fla.1973); or became "stateless" upon leaving Mexico, *Pannill v. Roanoke Times Co.,* 252 F. 910 (W.D.Va.1918); *Cowell v. Ducas,* 2 F.Supp. 1, 2 (S.D.N.Y. 1932); he lacked an established residence sufficient to provide this Court with diversity jurisdiction.

*Forum Non Conveniens*

■ Venue of this action is unquestionably "proper" under 28 U.S.C. § 1391, but defendant asserts, and this Court agrees, that the Southern District of New York is neither an appropriate nor convenient forum for the resolution of the issues raised by the complaint. Therefore, even assuming plaintiff had established a residence in New Jersey, the Court would be obliged to dismiss the complaint under the doctrine of *forum non conveniens.*

The criteria of decision under the doctrine of *forum non conveniens* were delineated by the Supreme Court in *Gulf Oil Corporation v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

> Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

There can be little doubt that this dispute, with its clear Mexican locus, complexities and contacts, should be resolved in Mexico in the interests of fairness and justice. Defendant argues that plaintiff has failed to join the following "necessary parties": Promotora de Guerrero, S.A., Alvaro Cervera, the Estate of Arnoldo Verboonem, Banco de Comercio, S.A.,[1] Banco Nacional de Obras y Servicios Publicos, S.A.[2] While it is not clear on the record before the Court whether or not those Mexican parties are in fact "necessary," it is clear that those entities are crucial sources of proof in this case. *See Fitzgerald v. Texaco, Inc.,* 521 F.2d 448, 450–3 (1975).

■ Because of the absence of any writing to demonstrate the existence of the joint ventures he alleges, plaintiff will be required to show at the trial of his claims that a finding of such joint ventures is justified by his actions and his relationship with the defendant.

---

1. Banco de Comercio apparently maintains what defendant calls a "good will" office in New York but is prohibited under banking regulations from doing extensive banking business in New York. Whether or not this office would be sufficient to subject this bank to process in New York is a question the Court needn't reach in light of the many other Mexican parties not subject to that process. *See Bryant v. Finnish National Airline,* 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965).

2. According to defendant, this bank now holds the land on which the hotel stands.

Those actions occurred and that relationship was pursued almost entirely in Mexico.

 In addition, the subject matter of the dispute is in Mexico. Dismissal under the doctrine of *forum non conveniens* is all the more justified in light of the plaintiff's request that the Mexican property be placed in constructive trust. As defendant has pointed out, there is serious doubt as to whether this Court could assert jurisdiction over this Mexican property or fashion an adequate remedy, should a remedy be required.[3]

In separate letters to the Court the defendant has shown that Mexican Courts would take jurisdiction of this case (i. e. that defendant is amenable to service of process in Mexico) and he has consented to be served with process in a Mexican litigation. By such submissions defendant has satisfied the rule requiring that there be at least two forums in which the defendant is amenable to process before the doctrine of *forum non conveniens* is applied. *Gulf Oil Corporation, supra,* 330 U.S. at 506–7, 67 S.Ct. 839.

The nature of the claims, their locus or origin, the factors of convenience, the availability of compulsory process and the application of foreign property law that may come into play in this case clearly outweigh the presumption in favor of plaintiff's choice of forum. *Gulf Oil Corporation, supra; Fitzgerald, supra.*

Accordingly, the motions to dismiss the complaint for lack of diversity jurisdiction and under the doctrine of *forum non conveniens* are granted on condition that defendant shall submit to the jurisdiction of courts in Mexico with respect to the subject matter of the claims herein. It therefore becomes unnecessary to pass on defendant's other motions.

Complaint dismissed.

So ordered.

---

**3.** A Court may indirectly act on foreign real estate through its authority over the parties before it, but neither the Court's decree nor any conveyance under it, except by the person in whom the title is actually vested, can operate beyond the jurisdiction of the Court. *Fall v. Eastin,* 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65 (1909); *Massie v. Watts,* 10 U.S. (6 Cranch) 148, 3 L.Ed. 181 (1810); see *Heyman v. Kline,* 456 F.2d 123, 127 n. 3 (2d Cir.) *cert. denied,* 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972);

*United States v. Ross,* 302 F.2d 831, 834 (2d Cir. 1962). Therefore, since this Court would have the power to order defendant to convey the hotel facility to a court-appointed receiver only if it could first declare defendant the owner or trustee of the land, jurisdiction over this facet of the case seems problematical. The Court does not, however, reach this issue in light of its decision on the other issues presented.