**Deborah Ann GALU,**
**Plaintiff–Appellant,**

v.

**SWISSAIR: SWISS AIR TRANSPORT CO., LTD., a/k/a Swiss Air Transport Co., Ltd., a/k/a Swissair, Defendant–Appellee.**

No. 345, Docket 88–7591.

United States Court of Appeals,
Second Circuit.

Argued Dec. 19, 1988.

Decided May 4, 1989.

Deborah Ann Galu, pro se, Ferney–Voltaire, France, for plaintiff-appellant.

Michael J. Holland, New York City (Condon & Forsyth, New York City, on the brief), for defendant-appellee.

Before FEINBERG, NEWMAN, and ALTIMARI, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal concerns the invocation of the act of state doctrine in a somewhat unusual context. The specific issue is whether the doctrine insulates from examination by a United States court the actions of an international airline that acted in cooperation with police officials of a foreign country forcibly to transport to the United States a person whom the foreign country had ordered expelled, an order alleged to afford the person a reasonable opportunity to depart to the country of her choice. The issue arises on an appeal by plaintiff Deborah Ann Galu from a judgment of the District Court for the Southern District of New York (Charles S. Haight, Jr., Judge) in favor of defendant Swissair. The appeal concerns primarily the correctness of the District Court's pretrial ruling dismissing on the basis of the act of state doctrine Galu's claim for damages based on Swissair's role in transporting her from Geneva to New York City against her will.

Because we conclude that the record as currently developed is insufficient to establish the availability of the act of state defense, we reverse and remand for further proceedings.

## Facts

The facts alleged in the complaint and supporting affidavits, and accepted for purposes of this appeal, are as follows. Galu is a United States citizen, who formerly resided in California with her parents and now considers herself a permanent resident of France. At the time of the incident at issue on this appeal, July 4, 1985, Galu was an employee of the United Nations High Commissioner for Refugees. She was employed in Geneva, Switzerland, and had begun her employment on July 1, 1985. At that time her principal residence was Paris, France. In connection with her new employment, she leased an apartment in Fernay–Voltaire, France, a fifteen-minute drive from Geneva just over the border between France and Switzerland. Expecting to move into her new apartment on July 6, she temporarily resided in an apartment in Geneva.

At 7:30 a.m. on the morning of July 4, Galu was stopped by two Geneva policewomen, Racordan and Aubrey, as she was about to drive to work. They demanded that she accompany them to the Geneva Immigration Bureau for a review of her visa status. At her request, they went with her into the apartment where she temporarily resided to inspect her UN employment documents. Inside the apartment the police officers telephoned their superior. Galu then spoke with their superior and was told to accompany the officers to the Immigration Bureau. Galu then attempted to call her lawyer, but the police officers forceably prevented her from doing so. Two more officers were summoned, and all four transported Galu to the Geneva police headquarters, where she was placed in a cell. At 9:30 a.m. officer Aubrey entered the cell and said, "You are being expelled. Where do you want to go?" Galu first said, "Ferney–Voltaire" and, when Aubrey rejected that destination, then said, "Paris," which the officer also rejected.

Galu was then driven by the police to the Geneva airport and placed in a cell there. One of the police officers who first apprehended Galu entered the cell, showed her an expulsion order, and asked her to sign it. Galu said she would not sign anything without her lawyer and also objected to what she claimed was inaccurate information in the order concerning her residence and status. The police then forcibly carried Galu onto a Swissair plane destined for New York City. Swissair was on notice that Galu was being brought onto the plane against her will by police officers purporting to be acting in the execution of the expulsion order. The Geneva police had purchased her ticket.

Galu thought the plane was headed for Paris. Upon being informed by passengers that the plane was going to New York City, she became hysterical. She was subdued and handcuffed by Aubrey and Racordon, who seated her between them for the flight to New York City. Galu left the plane upon arrival at John F. Kennedy International Airport, where she was arrested by Port of New York officers for assault, allegedly committed during the flight.

The circumstances concerning the expulsion order, as set forth in a decision of the Swiss Federal Court, are as follows. After Galu's arrival in Geneva in September 1984, she "importun[ed]" the family and friends of Farid Daniel, who had died in an automobile accident earlier that year. Galu claimed to be the fiancee of Daniel, who was married. Among the actions complained of by Daniel's family was Galu's placement of obituary notices in a Geneva newspaper. Daniel's family caused criminal charges to be brought against Galu. At a hearing, Galu agreed to stop harassing Daniel's family. Upon her failure to do so, she was arrested in May 1985. The criminal case was ultimately closed, apparently in contemplation of her voluntary return to France. On July 2, 1985, the day after Galu began her employment with the UN in Geneva, the Attorney General of the Canton of Geneva sent to the Cantonal Police for Aliens a letter from a lawyer for the Daniel family, complaining that Galu had returned to Geneva and had followed a family member on two occasions. The Cantonal Attorney General requested that Galu be prohibited from reentering Switzerland.

On July 4, 1985, the Geneva Department of Justice and Police issued the order alleged to invoke the act of state defense in this litigation. The order contains two directives. First, Galu is expelled from Switzerland for five years. Second she is ordered to leave Switzerland upon notification of the order. The precise import of the second directive is subject to interpretation that may be relevant to the issue in this litigation. The wording in French is: "Il lui est enjoint d'avoir a quitter la Suisse *des* la notification de la presente decision" (emphasis added). A translation in Swissair's papers renders this: "her to leave Switzerland immediately upon service of this decision." Galu disputes that the expulsion order required immediate departure.

After Galu's arrival in the United States and her subsequent return to France, she unsuccessfully appealed the expulsion order, first to the Council of State for the Canton of Geneva and ultimately to the Swiss Federal Court. The decision of the Swiss Federal Court, rendered April 2, 1987, rejected Galu's challenges to the expulsion order, including her claim of immunity because of her employment with the UN. Then, in language that may have significance for this litigation, the Court noted the following:

> In her latest brief, the appellant essentially takes issue with the way in which the deportation [*sic*] was executed. On this point, there might certainly be reason to doubt that the Cantonal authority respected all of the appellant's rights, in particular, Article 16, par. 8 RSEE which requires that the Canton grant the alien an appropriate period of time within which to leave Switzerland unless, on an exceptional basis, it is imperative that he or she be removed immediately.

However, the Federal Court declined to adjudicate Galu's challenge to the execution of the expulsion order, deeming it be-

yond its authority under the statute governing an administrative law appeal.

In 1986, prior to the decision of the Swiss Federal Court, Galu brought the instant suit against Swissair, seeking damages for the airline's role in her forcible removal from Switzerland and for injuries allegedly inflicted during the flight from Geneva to New York City.[1] On July 30, 1987, Judge Haight, acting upon Swissair's motion to dismiss the complaint, rejected Galu's claim concerning her forcible removal because of the act of state doctrine. He left for trial, however, Galu's claim concerning events during the flight to New York City. A jury resolved this claim in favor of Swissair. Galu appeals from the final judgment dismissing her complaint.

## Discussion

■ The act of state doctrine precludes the courts of this country "from inquiring into the validity of the public acts a recognized foreign power committed within its own territory." *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 401, 84 S.Ct. 923, 926, 11 L.Ed.2d 804 (1964). The doctrine applies when the challenged conduct "was the public act of those with authority to exercise the sovereign powers" of the foreign state. *Alfred Dunhill of London, Inc. v. Cuba,* 425 U.S. 682, 694, 96 S.Ct. 1854, 1861, 48 L.Ed.2d 301 (1976). Decisions considering the act of state doctrine have rarely had to consider the threshold issue of whether the challenged action was the act of a foreign state, since the action has usually been taken by an official of sufficient rank to eliminate any doubt that the official was exercising the sovereign power of his government. *See, e.g., Banco Nacional de Cuba v. Sabbatino,* supra (expropriation ordered by President of Cuba); *Oetjen v. Central Leather Co.,* 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726 (1918) (sei-

zure of property by military commander, acting for forces of head of Mexican government); *Underhill v. Hernandez,* 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897) (detention ordered by military commander of revolutionary government of Venezuela).

In the pending case, there can be no doubt, as the District Court ruled, that the expulsion order was an exercise of the sovereign power of Switzerland, precluding assessment of its validity by a United States court. Less certain, however, is the applicability of the act of state doctrine to the actions of the Geneva police officers in placing Galu on an airplane bound for New York City. On this issue, Judge Haight stated, after correctly ruling that the expulsion order must be presumed to be legal:

So must any actions taken by Swiss officials in furtherance of that order that were permitted by Swiss law. I have no doubt that Swiss law permits the use of reasonable force in carrying out governmental orders, and plaintiff does not allege otherwise. To the extent that Swiss-Air employees did no more than cooperate with Swiss officials in carrying out, with reasonable force, the expulsion order, SwissAir is immune from liability.

■ We agree with each of the three points made by the District Judge, but we cannot determine from the record thus far developed whether they support the District Court's conclusion that the act of state doctrine insulates the police officers and Swissair from imposition of liability. The District Judge appears to have assumed that the Geneva police officers, armed with the expulsion order, were entitled to carry out that order by placing Galu on a plane bound for New York City.[2] We are not so

---

1. The suit was filed in the New York Supreme Court and removed to the United States District Court. We need not decide whether federal question jurisdiction exists by virtue of the Warsaw Convention, since, as the District Court concluded, diversity jurisdiction exists; Galu has expressed an intention to return to her native state of California upon the termination of her residence in France.

2. The District Court evidently believed that the expulsion order was directed *to* the Swiss police authorities. *See* Memorandum Opinion of May 26, 1988, at 3. However, the order was in fact issued *by* the Cantonal Department of Justice and Police, as reflected in the order and as stated unequivocally in the opinion of the Swiss Federal Court.

sure. Our doubt arises because of what appears to be a significant difference under Swiss law between expulsion and deportation.

As the Swiss Federal Court noted, Article 16 of the pertinent Swiss statute (Act of March 1, 1949) affords the expelled person an appropriate period of time to leave Switzerland, unless it is imperative that he be removed immediately. Moreover, Galu contends that, under Article 55 of the Swiss Penal Code, the foreigner, in the event of expulsion, should be directed to the country of his choice, even if this is a neighboring country of Switzerland. Thus, after being served with the expulsion order, Galu may have been entitled to delay her departure from Switzerland at least for the time reasonably required to collect her belongings and then to remove herself to her apartment five miles away in France. The actions of the Geneva police officers, however, treated the expulsion order as if it were an order of deportation that required Galu to be removed to the United States.

It may be that Swiss law affords officers serving an expulsion order the discretion to determine that the subject refuses to remove voluntarily to a country of choice and in that event to transport the subject to a country selected by the authorities. A report by the officers indicates that they interpreted Galu's refusal to sign the expulsion order as an indication of her intention not to leave the country and for that reason decided to return her to her native country. But we do not know if an expulsion order confers such discretion upon lo-cal police officers, nor what steps are required to invoke the immediate removal authority apparently conferred by the applicable statute. The expulsion order itself contains a statement that anyone who disobeys an expulsion order will be punished with imprisonment; this statement appears to contemplate subsequent enforcement proceedings of some sort and arguably implies that peremptory removal by police officers is not authorized. Moreover, it is at least disquieting to note the doubt expressed by the Swiss Federal Court as to whether the Geneva police "respected all of [Galu's] rights."

The issue that requires further exploration is not whether the police officers may have slightly exceeded their authority in carrying out a decision of their government.[3] The issue is whether the action taken against Galu in removing her to the United States was an action that had been ordered in the exercise of the sovereign authority of Switzerland, or whether it was simply an *ad hoc* decision of local police officers. The burden is on the defendant to establish foreign law to the extent necessary to demonstrate its entitlement to the act of state defense. Evidence of foreign law is required not to determine whether the forceable removal of Galu was lawful but whether it was in fact an act of state.[4]

Even if further consideration of Swiss law should indicate that the Swiss government had exercised its sovereign powers only to require Galu to leave Switzerland to a country of her choice, rather than to be removed to the United States, Swissair will be entitled to assert whatever substantive

---

**3.** Actions of public officials that violate foreign law may nonetheless be insulated by the act of state doctrine so long as they are an exercise of the government's sovereign power, see *Banco de Espana v. Federal Reserve Bank,* 114 F.2d 438 (2d Cir.1940), but that is not necessarily true of unlawful actions wholly unratified by the government, *see Filartiga v. Pena–Irala,* 630 F.2d 876, 889 (2d Cir.1980); *Sharon v. Time, Inc.,* 599 F.Supp. 538, 544 (S.D.N.Y.1984).

**4.** As the newly revised *Restatement of Foreign Relations* notes:

An action ... by an official may qualify as an act of state, but only upon a showing (ordinarily by the party raising the issue) that the official had the authority to act for and bind the state.... The burden of establishing the act *and its character as an act of state* is on the party invoking the doctrine. The act of state doctrine does not preclude an initial inquiry as to whether a challenged act is in fact an act of state....
*Restatement (Third) of the Foreign Relations Law of the United States* § 443 comment i (1986) (emphasis added).

tort law defenses Swiss law makes available to a private entity acting at the behest of local police authorities. Both the act of state issue and any substantive tort law defense remain to be considered by the District Court on remand in light of this opinion.[5]

The judgment is affirmed to the extent it rejects Galu's claims for actions occurring during the flight to New York City; to the extent the judgment dismisses her claim concerning her forceable removal to the United States, the judgment is vacated, and the case is remanded for further proceedings. No costs.

---

**5.** In identifying these issues, we do not intend to foreclose any other defenses available to Swissair. For example, Swissair contends that it is insulated from liability by the provision of its tariff that purports to preclude liability "for any damage directly and solely arising out of [the carrier's] compliance with any laws or with governmental regulations, orders or requirements...." We express no views on either the meaning of this provision nor its applicability to a person for whom a ticket has been purchased under the circumstances of this case.