Deborah GALU, Plaintiff,

v.

Amy ATTIAS, Esq., Defendant.

No. 94 Civ. 8761 (JES).

United States District Court,
S.D. New York.

April 30, 1996.

See also 923 F.2d 842, 999 F.2d 537.

Deborah Galu, Plaintiff, Pro Se.

Amy Attias, Defendant, Pro Se.

## MEMORANDUM OPINION
## AND ORDER

SPRIZZO, District Judge.

Pursuant to 28 U.S.C. § 1332, plaintiff Deborah Galu, acting *pro se*, brings the instant action against her former attorney Amy Attias, also acting *pro se*, asserting claims of legal malpractice and negligent and intentional infliction of emotional distress arising out of Attias's representation of Galu on criminal charges. Pursuant to Federal Rule of Civil Procedure 56(c), Attias moves for summary judgment. Pursuant to Federal Rule of Civil Procedure 56(g), Galu cross-moves for summary judgment on the ground that Attias filed affidavits in support of her motion in bad faith. For the reasons that follow, Attias's motion is granted, and Galu's cross-motion is denied.

## BACKGROUND

On July 4, 1985, Deborah Galu, an American citizen and resident alien of France, was seized and forcibly deported from Switzerland, where she had been employed by the United Nations High Commissioner for Refugees. *See* Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment dated January 25, 1995, Off. Doc. 9 at 29–30;[1] *Galu v. Swissair*, 873 F.2d 650, 651 (2d Cir. 1989). Since her deportation, Galu has been involved in protracted civil and criminal litigation arising out of her deportation.[2] *See* "Affirmation" of Deborah Galu sworn to January 25, 1995, Off. Doc. 9 ("Second Galu Aff.") ¶ 2, at 10.

Galu, who has suffered from psychological problems for many years, alleges that during the course of this litigation her attorneys, her opponents' attorneys, the United States Attorney and various presiding judges subject-ed her to "years of litigation-abuse" by conspiring to defeat her civil litigation. *Id.* ¶¶ 10, 15, 18, 23, at 14, 20, 23, 27. Specifically, Galu claims, *inter alia*, that the succession of attorneys representing her before the district and circuit courts in *Galu v. Swissair*, 873 F.2d 650 (2d Cir.1989), accepted bribes to "mis-advise" her. *See* First Amended Complaint, Off. Doc. 8 ("First Am. Compl.") ¶ 4.

Thereafter, while proceeding *pro se* in the same litigation, Galu encountered considerable difficulty pleading her cause of action properly. Galu claims that, in an effort to stymie her litigation success, the opposing attorneys, insurers and judges conspired to "conceal[ ] 49 USC § 1502" from her, which she alleges contained the cause of action crucial to her pleadings, by hiding that volume from her in the law library. *See* First Am. Compl. ¶ 4. Galu further claims that the presiding district court judge was aware of this conspiracy but refused to remedy the problem. *Id.* ¶ 8.

As a result of her frustrations, Galu mailed letters to the district court judge presiding over one of her civil actions threatening to physically harm, *inter alia*, the district court judge and the Chief Justice of the United States Supreme Court. *See* Second Galu Aff. ¶ 3, at 11 and Exh. 4. On May 13, 1994, Deborah Galu was arrested and surrendered to pre-trial custody on federal criminal charges of threatening a judge, in violation of 18 U.S.C. § 877. *See* First Am. Compl. ¶ 2; *United States v. Galu*, 94 Cr. 911 (CBB).

At her initial appearance held the same day, the government moved pursuant to 18 U.S.C. §§ 4241 and 4247 to have Galu examined for competency to stand trial, and Galu, acting *pro se*, cross-moved to dismiss the indictment.[3] *See* First Am. Compl. ¶ 3. At

---

1. Galu has made voluminous filings in the instant case, most of which are unsworn. In addition, Attias filed a sworn affidavit and an unsworn memorandum of law. Where possible, the Court cites to the sworn filings. However, in an effort to construe all facts and inferences drawn therefrom in Galu's favor, the Court by necessity looks to unsworn filings to establish undisputed facts. The Court resolves any disputed facts, sworn or unsworn, in favor of Galu. In addition, for the sake of clarity, the Court cites to the official document ("Off. Doc.") numbers where necessary.

2. The underlying civil and criminal actions include *Galu v. Swissair*, 734 F.Supp. 129 (S.D.N.Y.1990), *Galu v. Felder*, 88 Civ. 3626 (KTD), *Galu v. Schnaeder, et. al*, 89 Civ. 7874 (CLB), *United States v. Galu*, 91 M 2096 (MDF), and *United States v. Galu*, 94 Cr. 911 (CLB).

3. Galu cross-moved to dismiss the indictment on the ground that, "as a 'victim of crime' she was entitled to *civil* psychological care in respect of Art-6 of 'The U.N. Declaration of Basic Principles of Justice for Victims of Crime and Abuse of Power.'" *See* Plaintiff's Statement Pursuant to

the initial appearance, the court granted the motion for a competency examination and denied Galu's cross-motion. *Id.* ¶ 4. Pursuant to the Criminal Justice Act, 18 U.S.C. § 3006(a), the court appointed Amy Attias to represent Galu at the competency hearing. *See id.* ¶ 4; Memorandum of Law in Support of Defendant's Motion for Summary Judgment, Off. Doc. 17 ("Attias Mem.") at 1. Attias is a sole practitioner who has practiced criminal defense law for many years. *See* Attias Mem. at 6–7; "Affirmation" of Deborah Galu sworn to January 4, 1995, Off. Doc. 19 ("First Galu Aff.") ¶ 8.

At the initial appearance and thereafter, Attias discussed the pending criminal charges with Galu. *See* Affidavit of Amy M. Attias Sworn to February 24, 1995, Off. Doc. 14 ("Attias Aff.") ¶¶ 4–6. From the outset, Galu insisted that Attias pursue the following defense strategy. Attias should "re-oppose" the motion for a competency examination and proceed directly to trial without any determination of Galu's competency to stand trial. *Id.* ¶ 3; First Am. Compl. ¶ 4. At trial, Attias should prove that as a result of the "litigation abuse" suffered at the hands of attorneys and judges throughout the various litigations, Galu was driven insane. First Am. Compl. ¶ 5. Galu claims that once Attias established at trial this and numerous

other conspiracies against her,[4] Galu would inevitably be found not guilty by reason of insanity. *See id.* ¶¶ 5,6; Second Galu Aff. ¶ 6, at 12.

Based upon her initial meetings with Galu, Attias believed that Galu's psychological infirmities made her incompetent to assist in her own defense. *See* Attias Mem. at 6; Attias Aff. ¶ 9. Thereafter, Attias met with Galu several times, during which Galu elaborated on her conspiracy theories regarding her civil cases. Attias Aff. ¶ 4. However, Galu refused to discuss the merits of what she termed the "meaningless" criminal charges. *Id.* ¶ 5. Rather, Galu believed that the charges "should be viewed simply as a means by which she could get the attention of the Court to help her with her civil case." *Id.* ¶ 5.

Attias communicated to Galu her concerns about Galu's competence and the feasibility of Galu's conspiracy defense strategy. *Id.* ¶ 7. Thereafter, Attias, with Galu's knowledge, began investigating possible treatment alternatives to sentencing. *Id.* Galu agreed with Attias that she needed serious psychological care but indicated that she preferred civil institutional care rather than criminal psychiatric treatment.[5] *Id.* Attias agreed

---

Local Rule 3(g) dated January 4, 1995, Off. Doc. 19 ("Pltff. 3(g) Stmt.") ¶ 1 (emphasis original).

**4.** In addition to proving that the attorneys in *Swissair* conspired to hide from Galu the crucial volume of the United States Code, Galu demanded that Attias prove assorted other disjunctive conspiracies allegedly contributing to her insanity which culminated in the threats. Examples of these conspiracies are:
 1) concerted "wilful negligence of the three CJA appointed attorneys" who represented Galu in a prior criminal action, *see* First Am. Compl. ¶ 3;
 2) a conspiracy between certain Swiss attorneys and the Swiss government to have Galu's deportation affirmed in Swiss courts by concealing the nature of her deportation, refusing to assert human rights claims, and falsifying documents filed therein, *see* Second Galu Aff. ¶¶ 10–14, at 14–19;
 3) a conspiracy between her Swiss attorneys to hide from Swiss administrative authorities the fact that she had been denied a fair proceeding in 1985 criminal charges for trespassing on a church, *see id.* ¶¶ 12, at 16; continued ...
 4) a conspiracy by the Japanese government to falsely accuse Galu of attempted murder,

thereby causing the Japanese Diplomatic Mission to the United States to terminate Galu's employment, *see id.* ¶¶ 12, 13, at 16–18; and
 5) various unspecified conspiracies among a United States Attorney, the Federal Bureau of Investigation, a Second Circuit Judge presiding over her *Swissair* appeal and others to deprive Galu of a litany of rights, *see id.* ¶¶ 18, 19, at 23–25.

**5.** Galu realized that, if found incompetent while facing criminal charges, she would receive psychiatric treatment in a criminal institution. *See* Attias Aff. ¶ 7. Galu believed that such care would be limited to treating her symptoms exhibited in making the threats. *See* Galu letter to the Court dated January 4, 1995, Off. Doc. 19 at 6–7 (unpaginated). Specifically, Galu feared that such treatment would involve forcing her to admit that her conspiracy theory lacks merit. *Id.* On the other hand, Galu believed that civil institutional psychiatric treatment would have offered treatment for her self-diagnosed "distress disorder," without requiring any admission regarding the civil cases. *See* Second Galu Aff. ¶¶ 6, 7, at 12–13.

that psychological care in the context of civil proceedings, rather than criminal, was a preferable course of treatment for Galu. *Id.* at 4. Attias believed that if Galu was found incompetent, the charges may be dropped and civil institutional care could be arranged. *Id.* ¶ 7. For these reasons, Attias did not move for reconsideration of the court's order for an incompetency evaluation. At some unspecified point thereafter, Galu informed the court that she intended to sue Attias for malpractice, and the court relieved Attias of her representation of Galu. *Id.* ¶ 8.

On June 2, 1994, the Metropolitan Corrections Center issued an evaluation which concluded that Galu suffered from a "vast delusional belief system" regarding the conspiracies against her and recommended a finding of Galu's incompetency. *See* First Am. Compl. ¶ 8; Pltff. 3(g) Stmt. ¶ 2. On June 23, 1994, the court found Galu to be incompetent. First Am. Compl. ¶ 8. Thereafter, Galu was transferred to a prison psychiatric ward in Kentucky for an evaluation of dangerousness. *Id.* A psychiatric report dated October 5, 1994 concluded that Galu was not dangerous. Second Galu Aff., Exh. 4. Based upon the psychiatric report and the government's representation that it no longer intended to seek an indictment against Galu, the court dismissed the criminal complaint and released Galu from custody. Second Galu Aff., Exhs. 3, 4.

On December 5, 1995, Galu filed the instant diversity action against Attias, a New York resident. Galu claims Attias committed legal malpractice by failing to "re-oppose" the government's motion for a competency exam. First Am. Compl. ¶¶ 6, 7. Galu also claims that Attias negligently and intentionally inflicted emotional distress suffered while in pre-trial incarceration undergoing a competency exam.[6] *Id.* ¶¶ 5, 7. Galu seeks $35 million in damages resulting from her pre-trial incarceration. *Id.* ¶ 8.

Pursuant to Federal Rule of Civil Procedure 56(c), Attias moves for summary judgment on the grounds that 1) the Court lacks

subject matter jurisdiction under the diversity statute, 2) the Court lacks jurisdiction over Attias's person, and 3) Galu's claims of negligence and infliction of emotional distress fail as a matter of law. Thereafter, Attias withdrew her objection to any defects in personal and subject matter jurisdiction. *See* Attias Mem. at 2. Pursuant to Federal Rule of Civil Procedure 56(g), Galu cross-moves for summary judgment on the ground that Attias filed affidavits in support of her motion in bad faith. *See* First Galu Aff. ¶¶ 1, 6, at 1, 5.

## DISCUSSION

As a preliminary matter, because defects in subject matter jurisdiction cannot be waived, the Court must determine the existence of jurisdiction. *See Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 851, 106 S.Ct. 3245, 3256–57, 92 L.Ed.2d 675 (1986). Because Galu has failed to establish diversity of citizenship within the meaning of the diversity statute, 28 U.S.C. § 1332(a)(1), the Amended Complaint must be dismissed. A plaintiff suing in diversity must establish that he is a citizen of one state suing a citizen of another state, or a citizen of a foreign country suing a citizen of a state. *See* 28 U.S.C. § 1332(a)(1)(2); *see also Sadat v. Mertes,* 615 F.2d 1176, 1180 (7th Cir.1980). However, it is well-established that no diversity jurisdiction exists in an action brought by an American citizen domiciled abroad who is not a citizen of any particular state. *See id.; Smith v. Carter,* 545 F.2d 909, 911–12 (5th Cir.), *cert. denied,* 431 U.S. 955, 97 S.Ct. 2677, 53 L.Ed.2d 272 (1977); *Vidal v. South American Securities Co.,* 276 F. 855, 875 (2d Cir.1922); *Gefen v. Upjohn Co.,* 885 F.Supp. 123, 125–26 (E.D.Pa.1995); *Willis v. Westin Hotel,* 651 F.Supp. 598, 602 (S.D.N.Y.1986); *Simmons v. Rosenberg,* 572 F.Supp. 823, 824 (E.D.N.Y.1983); *Berhalter v. Irmisch,* 75 F.R.D. 539, 541 (W.D.N.Y.1977); *Mohr v. Allen,* 407 F.Supp. 483, 487–88 (S.D.N.Y. 1976); *Kaufman and Broad, Inc. v. Gootrad,* 397 F.Supp. 1054, 1055 (S.D.N.Y.1975).

---

**6.** Galu claims that, but for Attias' failure to object to the competency exams and proceed to defend on the merits, Galu would not have been subject to seven and one half months of "Russian Goulag Style" drug treatment while being examined for competency and dangerousness by prison psychiatrists. First Am. Compl. ¶ 5, 7; First Galu Aff. ¶ 11, at 8.

■ For the purpose of § 1332(a)(1), a party's citizenship is determined by domicile. *See Williamson v. Osenton,* 232 U.S. 619, 624–25, 34 S.Ct. 442, 442–43, 58 L.Ed. 758 (1914); *Willis,* 651 F.Supp. at 601. Domicile requires both presence and an intention to remain for the indefinite future. *See Texas v. Florida,* 306 U.S. 398, 424, 59 S.Ct. 563, 575–76, 83 L.Ed. 817 (1939); *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29 (1989). At any one time, a party can have multiple residences but only one domicile. *See, e.g., Osenton,* 232 U.S. at 625, 34 S.Ct. at 443. Diversity of citizenship is determined as of the date the action is commenced. *See Freeport–McMoRan v. KN Energy, Inc,* 498 U.S. 426, 426–29, 111 S.Ct. 858, 858–60, 112 L.Ed.2d 951 (1991); *Maryland Casualty Co. v. W.R. Grace & Co.,* 23 F.3d 617, 622 (2d Cir.1994). Once the action is commenced by the filing of the initial complaint, a party's change of domicile does not affect the presence or absence of diversity. *See Smith v. Sperling,* 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1113 n. 1, 1 L.Ed.2d 1205 (1957). An individual's residence at the time the law suit is commenced is prima facie evidence of his domicile. *See Krasnov v. Dinan,* 465 F.2d 1298, 1301 (3d Cir.1972); *see also District of Columbia v. Murphy,* 314 U.S. 441, 455–56, 62 S.Ct. 303, 309–10, 86 L.Ed. 329 (1941) (residency for purposes of state taxes).

■ In her First Amended Complaint, Galu states that she is an American citizen who is a "resident alien of France domiciled at 'Les Ecrins' ave du Bijou, 01210 Ferney–Voltaire France." First Am. Compl. ¶ 1. Generally, such a formal judicial admission in a pleading would be conclusive. *See American Title Ins. Co. v. Lacelaw,* 861 F.2d 224, 226 (9th Cir.1988); *White v. ARCO/Polymers, Inc.,* 720 F.2d 1391, 1396 (5th Cir. 1983); *Frederic P. Wiedersum Ass. v. Nat'l Homes Constr. Corp.,* 540 F.2d 62, 65 (2d Cir.1976). However, in an effort to construe her *pro se* pleadings liberally, *see Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652, *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972), the Court has searched all of Galu's filings for a jurisdictional basis. By affidavit, Galu proffers some evidence connecting her more recently to California, including a California drivers license, her parents' California residence, and various visits to California. *See* Second Galu Aff. ¶¶ 3, 4, at 1.

However, because Galu states that it was not until after she filed the complaint in the instant action that she decided to make California her domicile, no diversity existed on the date the action was filed. Indeed, Galu claims to have lived in France as a resident alien since 1974. First. Am. Compl. ¶ 1. Her incarceration in Kentucky and New York while undergoing competency examination does not alter her domicile. *See Stifel v. Hopkins,* 477 F.2d 1116, 1121 (6th Cir.1973); *White v. Fawcett Publications,* 324 F.Supp. 403, 404 (W.D.Mo.1971); *see also* 1 Moore's Federal Practice, P0.142 (5.–2), p. 1484, n. 5.

Although between 1991 and 1993, while involved in her civil litigations, Galu travelled between New York, California and France, including a six month stay with her parents in 1991, *see* First Am. Compl. ¶ 2, upon being released from pre-trial incarceration when the criminal complaint was dismissed on December 1, 1994, Galu returned to France under her non-resident alien visa and set up a home in an effort to be near her estranged French boyfriend. *See* Second Galu Aff. ¶¶ 6, 7, at 2, 3.

On December 5, 1994, while living in France, Galu filed the instant action. Thereafter, on December 29, 1994, Galu learned from French authorities that her visa, due to expire in 1997, would not be renewed. *See* Second Galu Aff. ¶ 6, at 2. In light of a temporary restraining order preventing her from seeing her boyfriend and the fact that her visa would not be renewed, Galu decided to return to her parents' home in California upon the expiration of her French residency in 1997. *See id.* ¶ 7, at 3; Plaintiff's "Joint Pre–Trial Order" dated September 18, 1995, Off. Doc. 20 ("Pltff. PTO") ¶ 1. During the pendency of most of this action, Galu has been institutionalized in a psychiatric facility in France.

Based upon foregoing undisputed facts and all rational inferences derived therefrom in Galu's favor, the Court concludes as a matter

of law that Galu was domiciled in France on December 5, 1994, the date she filed the instant action. *See Krasnov,* 465 F.2d at 1301. At that time, she had moved to France and rented housing with an intention to be near her boyfriend. Only after filing the instant action did she decide to return to California when her visa expired in 1997. In an effort to establish domicile in California at the time she filed this action, Galu states that she always "knew deep down that I would return 'home' to California." Second Galu Aff. ¶ 4, at 2. However, an eventual desire to return is insufficient to overcome the undisputed evidence that she was domiciled in France at the time of filing the complaint. *See Gilbert v. David,* 235 U.S. 561, 569, 35 S.Ct. 164, 166, 59 L.Ed. 360 (1915) ("[if] a person has actually removed to another place, with an intention of remaining there for an indefinite time, and as a place of fixed present domicil[e], it is to be deemed his place of domicil[e], notwithstanding he may entertain a floating intention to return at some future period") (citation omitted).[7]

In any event, Galu asserts no evidence upon which a fact finder could rationally conclude that Attias was negligent in her representation of Galu. Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Aldrich v. Randolph Cent. School Dist.,* 963 F.2d 520, 523 (2d Cir.), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). While the Court must draw all reasonable inferences in favor of the non-moving party in assessing whether a genuine issue of material fact exists, a party opposing summary judgment may not simply rest on the allegations in his pleadings. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. To survive summary judgment, Galu must present specific facts based upon personal knowledge or otherwise admissible in evidence showing that there is a genuine issue for trial. *See id.; Gnazzo v. G.D. Searle & Co.,* 973 F.2d 136, 138 (2d Cir.1992).

■ Where, as here, Galu has failed to allege a basis which could give rise to a reasonable inference of malpractice, her claim must be dismissed. To state a claim for legal malpractice, a plaintiff must show 1) the existence of an attorney-client relationship, 2) negligence by the attorney, 3) proximate cause between the negligence and the loss sustained and 4) actual damages. *See Prudential Ins. Co. of Am. v. Dewey, Ballantine,* 170 A.D.2d 108, 114 (1st Dep't 1991), *aff'd,* 80 N.Y.2d 377, 590 N.Y.S.2d 831, 605 N.E.2d 318 (1992); *Gray v. Wallman & Kramer,* 184 A.D.2d 409, 413, 585 N.Y.S.2d 46 (1st Dep't 1992). A lawyer who "reasonably believes that the client cannot adequately act in the client's own interest" may take

7. Galu's assertion that, because diversity was found to exist in the *Galu v. Swissair* litigation, it must also be present in the instant action, is misplaced. In *Swissair,* the Second Circuit held that " ... as the District Court concluded, diversity jurisdiction exists: Galu has expressed an intention to return to her native state of California upon the termination of her residence in France." *Galu v. Swissair,* 873 F.2d 650, 653, n. 7 (2d Cir.1989). As a preliminary matter, the factual basis for the court's finding of an intent to return to California is unclear from the record. Indeed, in the *Swissair* complaint, Galu states that she is a resident of New York. Thereafter, the district court denied Galu's motion to file a proposed amended complaint, which alleged, *inter alia,* that Galu had been a resident non-alien of France since 1976. Nor does the *Swissair* record reveal whether the issue of Galu's intent to return to California was raised in the district court.

In any event, even assuming, *arguendo,* that a sufficient factual basis supported the finding that Galu had a fixed intention to return to California at the time she filed the *Swissair* complaint in 1986, such a conclusion is not controlling in the instant case. Between the time she filed the *Swissair* complaint in 1986 and the instant complaint on December 5, 1994, Galu travelled extensively between New York, California, and France. After being released from incarceration on December 1, 1994, Galu returned to France with a fixed intention to remain for the indefinite future. It was only after Galu filed the instant complaint that Galu decided to return to California upon the expiration of her visa in 1997. Prior to that time, she had no fixed intention to return to California, as noted above. Thus, no diversity jurisdiction exists.

"protective action." *See* Model Rules of Professional Conduct Rule 1.14(b) (Discussion Draft 1983); Model Code of Professional Responsibility EC 7–12 (1980).

■ It follows that where, as here, a criminal defense attorney reasonably believes that her client may be incompetent, and indeed the client admits her need for institutionalization, the attorney's refusal to seek vacatur of a court's order for a competency exam is reasonable as a matter of law. *See Bundy v. Dugger*, 816 F.2d 564, 567 n. 2 (11th Cir.), *cert. denied*, 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987) ("[i]f defense counsel suspects that defendant is unable to consult with him 'with a reasonable degree of rational understanding,' he cannot blindly accept his client's demand that his competency not be challenged") (quoting *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)) (citations and internal quotations omitted). Indeed, because other circuits have held that a criminal defense attorney has an affirmative duty to investigate her client's competency, *see id.; Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir.1989) (citing *Foster v. Dugger*, 823 F.2d 402, 405 (11th Cir.1987)), *cert. denied*, 487 U.S. 1241, 108 S.Ct. 2915, 101 L.Ed.2d 946 (1988), Attias may well have been obliged to consent to the competency exam on behalf of her client.

■ Nor can Attias be held liable for refusing to pursue a litigation strategy, such as that advanced by Galu, which she reasonably believes to be uncolorable. "A lawyer is not required to pursue objectives or employ means simply because a client may wish that lawyer to do so." Model Rules of Professional Conduct Rule 1.2 cmt. Because a lawyer is prohibited from taking action "when it is obvious that such action would serve merely to harass or maliciously injure another" or is otherwise uncolorable, *see* New York Code of Professional Responsibility DR 7–101, codified in N.Y. Jud.Law.App.1992 & Supp.1996, Attias was constrained by her ethical obligations to refuse to advance Galu's collateral conspiracy theories at trial in lieu of a competency exam. *See Thompson v. Wainwright*, 787 F.2d 1447, 1451 (11th Cir.1986) (defense counsel cannot "blindly follow" defendant's instructions concerning his defense,

especially where counsel suspects defendant's judgment impaired by "mental difficulties"); *see also* Model Rules of Professional Conduct Rule 1.2 cmt; New York Code of Professional Responsibility DR 7–101(B)(1) ("in the representation of a client, a lawyer may, where permissible, exercise professional judgment to waiver or fail to assert a right or position of the client"). This is especially true where, as here, the attorney's strategy successfully averted the risk of conviction and ultimately resulted in the dismissal of all criminal charges.

■ In addition, Galu fails to allege any damages recoverable under a malpractice claim. A plaintiff suing in malpractice can recover only pecuniary loss but not for mental or psychological suffering. *See Walker v. Stroh*, 192 A.D.2d 775, 596 N.Y.S.2d 213 (3rd Dep't 1993); *Dirito v. Stanley*, 203 A.D.2d 903, 611 N.Y.S.2d 65, 65 (4th Dep't 1994); *Green v. Leibowitz*, 118 A.D.2d 756, 757, 500 N.Y.S.2d 146 (2d Dep't 1986). Therefore, Galu cannot recover in malpractice for the alleged psychological trauma suffered during her treatment. Moreover, because Attias was ·appointed counsel, and Galu therefore paid no fees for the allegedly negligent representation, she suffered no pecuniary loss of that nature.

■ Galu's claim of intentional infliction of emotional distress also fails. To establish such a claim, a plaintiff must show that the defendant engaged in 1) extreme or outrageous conduct, 2) with the intent to cause, or in disregard of a substantial probability of causing, severe emotional distress, 3) causal connection between the conduct and the injury, and 4) severe emotional distress. *See Howell v. New York Post Co.*, 81 N.Y.2d 115, 121–22, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993). Liability exists "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in 'civilized community'") (quoting *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983)). Because Galu has alleged no basis upon which a fact finder could rationally

conclude that Attias engaged in extreme or outrageous conduct, her claim must fail. *See Howell,* 81 N.Y.2d at 121, 596 N.Y.S.2d 350, 612 N.E.2d 699.

 Galu's claim for negligent infliction of emotional distress must likewise be dismissed. Although a plaintiff asserting a claim for negligent infliction of emotional distress need not establish a physical injury, she must allege conduct that "unreasonably endangers the plaintiff's physical safety." *Losquadro v. Winthrop University Hospital,* 216 A.D.2d 533, 628 N.Y.S.2d 770, 771 (2d Dep't 1995); *see also Bovsun v. Sanperi,* 61 N.Y.2d 219, 229, 473 N.Y.S.2d 357, 461 N.E.2d 843 (1984); *Glendora v. Gallicano,* 206 A.D.2d 456, 456, 615 N.Y.S.2d 45 (2d Dep't 1994). New York courts have cautioned against permitting a cause of action for infliction of emotional distress as a substitute for traditional tort or contract claims. *See Green v. Leibowitz,* 118 A.D.2d 756, 757, 500 N.Y.S.2d 146 (2d Dep't 1986); *Sanders v. Rosen,* 159 Misc.2d 563, 605 N.Y.S.2d 805, 811 (Sup.Ct.1993) (citing *Murphy v. American Home Products,* 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983)). Galu's allegations that the examination of her dangerousness consisted of "Russian Goulag style" torture are based upon no more than the prescription of unpleasant anti-psychotic medication, which clearly does not rise to the level of an unreasonable danger of physical safety. *See Losquadro,* 628 N.Y.S.2d at 771. Furthermore, Galu sets forth no factual basis for any rational finding that Attias was negligent or could reasonably have foreseen any unreasonable danger for her personal safety. Moreover, Galu, who admits that her experience during the incompetency exam was worsened by her own refusal to cooperate, has also failed to establish that Attias caused the emotional distress of which she complains. *See* Pltff. 3(g) Stmt. ¶ 2. It follows that Galu's claim must be dismissed. *See Bovsun,* 61 N.Y.2d at 229, 473 N.Y.S.2d 357, 461 N.E.2d 843.[8]

8. Because Galu has set forth no basis upon which the Court can conclude that Attias filed her answer, motion or affidavits in bad faith, her cross-motion for summary judgment must be denied.

## CONCLUSION

For the reasons set forth above, Attias' motion for summary judgment shall be and hereby is granted, and Galu's cross motion for summary judgment shall be and hereby is denied. The Clerk of Court is directed to enter judgment and close the above-captioned action.

It is SO ORDERED.